* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence, modifies and affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were agreed upon by the parties as stipulations:
 STIPULATIONS
1. At the time of the alleged injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. An employer-employee relationship existed between the parties at the time of the alleged injury on October 26, 2004.
3. The Defendant-Employer is self-insured with Key Risk Management Services, Inc., as the Third-Party Administrator.
4. The parties stipulate Plaintiff's average weekly wage was $1,027.64 yielding a compensation rate of $685.13 per week.
 * * * * * * * * * * * ISSUES
The issues before the Deputy Commissioner as presented by Plaintiff were:
1. To what medical treatment is the employee entitled in order to effect a cure, provide relief or lessen her disability for her compensable injury?
2. Is the employee entitled to treatment with the physician of her choice?
3. Has the employee been offered suitable employment?
 * * * * * * * * * * *
Based upon the foregoing Stipulations and the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner Plaintiff was a Reading Specialist for the Hoke County School System. Plaintiff had worked for the school system as a teacher for approximately twenty-eight years. Plaintiff has a Masters Degree in Elementary Education with a concentration in reading. Plaintiff's date of birth is December 4, 1955. *Page 3 
2. On October 26, 2004, Plaintiff was working as a Reading Specialist at Rockfish Elementary School in Raeford, North Carolina. Plaintiff's job duties included instructing small groups of students in reading, and maintaining records of the students' classroom assignments. Plaintiff was also responsible for cafeteria, bus and hall duty throughout the school year.
3. On October 26, 2004, Plaintiff sustained an injury when she slipped and fell while walking a group of students to their classroom. Plaintiff testified that when she realized she was slipping she tried to balance herself but her legs twisted inward and she fell to the cement floor primarily on her left side. Plaintiff's fall constituted an unusual, unforeseen occurrence, which interrupted her usual work routine and was therefore an accident which arose out of and in the course of her employment.
4. Plaintiff initially cancelled a few classes and took a break but resumed her work duties the same day. On or about November 16, 2004 Plaintiff sought treatment at FirstHealth of the Carolinas complaining of problems with her left knee, both feet feeling weak and difficulty standing a long time or "walking far." Plaintiff reported she had no problems prior to her fall and that she needed to see a specialist. The medical note from FirstHealth documents that Plaintiff fell on October 26, 2004. The medical provider diagnosed "acute strain to feet, back, knees." Plaintiff was excused from hall duty until November 26, 2004 and scheduled for an x-ray on November 17, 2004. Both of her feet were x-rayed and no definite soft tissue abnormalities were identified.
5. On November 29, 2004 Plaintiff returned to FirstHealth complaining of the onset of shoulder pain with yawning and a deep breath and that she thought it was related to her fall. Plaintiff was informed that her pain was not likely related to her fall. Plaintiff continued to complain of left knee swelling and bilateral foot pain. *Page 4 
6. On December 4, 2004, Plaintiff was seen at Cape Fear Health System for non-specific chest and left arm pain. An x-ray of the chest revealed no evidence of active disease of the lungs or pleura.
7. Plaintiff presented to FirstHealth again on February 16, 2005 with complaints of left knee swelling and persistent knee and leg pain. Plaintiff stated that she wanted to find out what was wrong with her. Defendant authorized and paid for the medical treatment provided by FirstHealth.
8. On February 4, 2005 Plaintiff was seen by Lakeview Urgent Care and Family Center. The medical note is unclear but it appears that Plaintiff complained of pain all over since her fall at work. Back pain was one of the diagnoses. Plaintiff was prescribed Darvocet, written out of work from February 4, 2005 through February 9, 2005 and restricted to no standing longer than 15 minutes until cleared by an orthopedist. Plaintiff was referred to Dr. Douglas McFarlane and Lakeview scheduled an appointment for March 3, 2005. Plaintiff returned to Lakeview for treatment on March 7, 2005 with complaints of pain in the left shoulder and neck since her fall at work in October 2004. Plaintiff was written out of work from March 7, 2005 through March 9, 2005.
9. Plaintiff sought treatment again at Lakeview Urgent Care on March 13, 2005 for pain in her left arm and shoulder. Plaintiff acknowledged that she was being treated by Dr. McFarlane but said she needed a note for work. There is no evidence establishing that Plaintiff was taken out of work, or was asking to be taken out of work at that time. Plaintiff's treatment at Lakeview was related to her fall, but it does not appear from the evidence that Defendant authorized or paid for the treatment. Defendant authorized the referral to Dr. McFarlane by Lakeview Urgent Care so Defendant apparently had knowledge of the treatment. The treatment *Page 5 
Plaintiff received at Lakeview Urgent Care was reasonably required to effect a cure, provide relief or lessen Plaintiff's disability from her compensable injury.
10. On March 3, 2005 Plaintiff saw Dr. Douglas McFarlane of Cape Fear Orthopaedic Clinic with complaints of pain in her hips, legs, and knees and left shoulder pain. Plaintiff underwent a cervical MRI and a lumbar MRI on April 1, 2005. The cervical MRI showed spondylosis from C4-5 through C6-7, which Dr. McFarlane interpreted as normal. The MRI of the lumbar spine was "unremarkable without evidence of an acute osseous or disc herniation," but there was evidence of an unrelated, enlarged fibroid uterus. On April 5, 2005 Plaintiff was seen by Sean Wilson PA-C for Dr. McFarlane, at Cape Fear Orthopaedic for complaints of bilateral knee pain and left hip pain. She was diagnosed with left knee chondromalacia and left hip subtrochanteric bursitis. Her physical therapy was continued. At her follow-up appointment with Dr. McFarlane on May 3, 2005, Plaintiff was given restrictions of no lifting over 5 pounds and standing limited to no more than 15 minutes at a time. By June 7, 2005 Plaintiff had improved but she was still not able to do prolonged standing or strenuous activities. Her physical examination showed pain-free range of motion in her cervical spine and both hips and no tenderness over the greater trochanter of the left hip. Plaintiff reported occasional numbness down her left leg. Dr. McFarlane recommended water aerobics over the summer.
11. Plaintiff saw Dr. McFarlane again on August 16, 2005. Plaintiff reported some improvement in her condition but expressed concern that she might aggravate her condition upon returning to work after her summer vacation due to the lifting, carrying, pushing and pulling she would have to perform in her job. Dr. McFarlane understood her concerns even though he found nothing objectively on testing and physical examination. He gave her work restrictions of no standing or walking more than 30 minutes in an hour, no pushing or pulling more than 10 pounds *Page 6 
and no lifting more than 10 pounds. Dr. McFarlane also recommended that Plaintiff have an independent medical examination and second opinion from a rehabilitation specialist to see whether there was any further treatment to improve her symptoms. Plaintiff was instructed to return as needed. With respect to his summary of Plaintiff's condition, Dr. McFarlane noted that it was hard to come to a very clear diagnosis, however, on his initial evaluation Plaintiff certainly appeared to have some left trochanteric bursitis of the hip and also an element of chondromalacia patallae, more in the left knee than the right.
12. Defendant's assigned medical case manager, Mr. Milton Little, sent a letter to Dr. Walsh on October 17, 2005 stating that Plaintiff was injured at work on October 26, 2004 and asking him to address a number of concerns as set forth in his letter. On October 18, 2005 Plaintiff was seen by Dr. Zane Walsh, Jr. for an independent medical examination and second opinion upon the recommendation from Dr. McFarlane. At that time Plaintiff had complaints of chronic left leg pain. Dr. Walsh noted that there was no objective injury other than some mild trochanteric tenderness. He recommended anti-inflammatory medication and restricted Plaintiff's lifting to 10 pounds.
13. On November 17, 2005 Dr. Walsh gave Plaintiff a trochanteric bursa injection for her left hip pain and recommended that she see her primary care physician due to blood pressure problems. On December 15, 2005 Plaintiff returned to Dr. Walsh complaining of left leg and arm pain and of diffuse fatigue. Dr. Walsh noted that he could not relate Plaintiff's diffuse complaints of pain totally to her fall of many months ago and that her complaints were disproportionate to her objective findings. He decided to perform an EMG, which was normal and recommended a Functional Capacity Evaluation, which demonstrated that Plaintiff exhibited voluntary submaximal effort or very poor effort. Dr. Walsh held Plaintiff out of work until the *Page 7 
tests were completed. The EMG was completed on December 19, 2005 and the FCE on January 5, 2006.
14. On January 12, 2006, Dr. Walsh opined that Plaintiff had reached maximum medical improvement (MMI), and assigned a 2% permanent partial disability rating to her left arm and a 2% permanent partial disability rating to her left leg. Plaintiff was released with permanent work restrictions, which included no lifting greater than 10 pounds and no pushing or pulling greater than 10 pounds.
15. Plaintiff continued to work following her injury, although there were days when she was medically excused from work due to her injury. She completed the school year ending June 2006. There is no evidence indicating that Plaintiff received treatment for her injury from the time Dr. Walsh rated her and gave her permanent restrictions on January 12, 2006 until August 2006; however Dr. Walsh did recommend that she be evaluated by a neuromuscular specialist.
16. On August 17, 2006 when the next school year was beginning, Plaintiff saw Dr. James E, Rice upon a self-referral. At that time she complained of low back pain with left leg radiculopathy, tingling in her left lower foot and left leg numbness. She told Dr. Rice that her pain was getting worse and she was thinking of disability and retirement. Dr. Rice reluctantly took her out of work for two weeks until she could get a more thorough evaluation and asked her to obtain her MRI scans and return in two weeks. Plaintiff testified that she did not remain out of work during most of the ten-day period.
17. On September 20, 2006 Dr. Divya Patel evaluated Plaintiff at the request of Lakeview Urgent Care. Dr. Patel ordered x-rays and other imaging tests, provided a prescription for a TENS unit and LSO and recommended that Plaintiff provide copies of prior diagnostic tests *Page 8 
and follow-up with her after the radiology work is done. Dr. Patel's medical note indicated that Plaintiff was "off work" but there is no indication that she took Plaintiff out of work.
18. The Full Commission finds that Plaintiff sustained compensable injuries to her knees, legs, hips, left arm and shoulder, neck and back as a result of her fall on October 26, 2004. Plaintiff reported problems with her back as early as November 17, 2004, problems with her left shoulder as early as November 29, 2004, left arm pain by December 4, 2004 and shoulder and neck pain by March 7, 2005. Additionally, Plaintiff had complaints of knee, hip and leg pain consistently throughout the course of treatment, but these symptoms had improved by January 12, 2006 when Dr. Walsh found she was at maximum medical improvement.
19. By a Form 63 notice of payment of compensation without prejudice on May 5, 2005 Defendant agreed to pay Plaintiff compensation for an injury on October 26, 2004 and agreed that disability began on November 30, 2004. Defendant further waived their right to contest Plaintiff's claim or their liability for the claim by taking no further action to deny the claim within the time allowed by statute. By May 5, 2005 when the Form 63 was filed, all of the complaints that Plaintiff claims to be related to her fall had already been reported to medical providers and appeared in medical notes. Defendant indicated on their Form 33R where they were required to list parts of body that Plaintiff injured, "multiple complaints."
20. As a result of her injuries Plaintiff required medical treatment from a number of medical providers and missed time from work intermittently. The medical treatment provided to Plaintiff by FirstHealth, Lakeview Urgent Care, Dr. McFarlane, Dr. Walsh, Cape Fear Medical System on December 4, 2004, Dr. Patel and Dr. Rice on August 17, 2006 was reasonably required to effect a cure, provide relief or lessen her disability from her compensable injury. *Page 9 
21. Dr. Patel evaluated Plaintiff on September 20, 2006, approximately three weeks prior to the hearing before the Deputy Commissioner. At that time Plaintiff's complaints related to the same body parts she injured in the fall.
22. Plaintiff requested a hearing by a Form 33 seeking additional medical treatment on April 11, 2006.
23. Defendant reported on a Form 28B on September 6, 2007 that medical and rehabilitation expenses had been paid on this claim but no disability compensation had been paid to Plaintiff.
24. As a result of her compensable injury, Plaintiff was unable to work from February 4, 2005 until February 9, 2005 (5 days) and from March 7, 2005 until March 9, 2005 (2 days). Based on the medical note of Dr. Walsh Plaintiff was also taken out of work from on or about December 15, 2005 through January 5, 2006 (20 days). Plaintiff was temporarily, totally disabled from work and entitled to compensation during these days when she was removed from work.
25. Based upon the greater weight of the evidence, Plaintiff was capable of working within the permanent restrictions imposed by Dr. Walsh after she reached maximum medical improvement on January 12, 2006. Dr. Rice reluctantly took her out of work in August 2006 due to her subjective complaint of worsening pain and her fear that work would aggravate her condition since he did not have enough information to do a thorough evaluation. Also, Plaintiff testified she worked during most of this two-week period she was taken out of work.
26. There is insufficient evidence from which to find that the complaints of pain Plaintiff reported to Dr. Rice on August 17, 2006 and to Dr. Patel on September 20, 2006 were disabling. Plaintiff had not sought medical treatment for more than 6 months, based on the *Page 10 
record before the Commission. Plaintiff appeared to have the same types of complaints that she reported more than a year earlier, but had continued to work. Also, the MRI's of Plaintiff's lumbar and cervical spine taken more than a year and a half earlier were basically normal.
27. Defendant has always provided suitable employment for Plaintiff within the permanent restrictions imposed by Dr. Walsh. As of the date of hearing before the Deputy Commissioner, Plaintiff was not working. It is unclear from Plaintiff's testimony why she believes she is unable to work. Plaintiff testified that the school has accommodated her work restrictions.
 * * * * * * * * * * *
Based on the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident due to a fall, arising out of and in the course of her employment on October 26, 2004. As a result of her fall, Plaintiff sustained injuries to her knees, legs, hips, left arm and shoulder, neck and back. Defendant admitted Plaintiff's injury on a Form 63. N.C. Gen. Stat. §§ 97-2(6), 97-18.
2. As a result of her injuries, Plaintiff required medical treatment from a number of medical providers. The medical treatment provided to Plaintiff by FirstHealth, Lakeview Urgent Care, Dr. McFarlane, Dr. Walsh, Cape Fear Medical System, Dr. Patel and Dr. Rice on August 17, 2006 was reasonably required to effect a cure, provide relief or lessen her disability from her compensable injury. Defendant is obligated to pay for the treatment provided to Plaintiff by these medical providers. The August treatment provided by Dr. Rice and the treatment provided at Lakeview involved body parts that Plaintiff injured in her fall. Defendant authorized the *Page 11 
treatment by FirstHealth, Dr. McFarlane, Dr. Walsh and apparently Cape Fear Medical Center. N.C. Gen. Stat. § 97-25.
3. As a result of her ongoing pain from her injuries, Plaintiff moved for a hearing on April 11, 2006 to obtain approval of additional medical treatment. Plaintiff's request was timely filed. Plaintiff has established through the physical examination of Dr. Patel that she has positive findings that may support her complaints of ongoing neck pain, lower back pain, left leg pain, weakness in the left lower limb and numbness in the left hip and left leg area. Plaintiff is entitled to treatment for all of the compensable consequences of her injury. Defendant may continue to direct future medical treatment; however, the treatment provided by Dr. Rice on August 17, 2006 and by Dr. Patel on September 20, 2006 should be authorized as it was reasonably required and Plaintiff had already sought approval for additional medical treatment. N.C. Gen. Stat. § 97-25.
4. As a result of her injury Plaintiff is entitled to payment for the 2% permanent partial disability rating to her left arm and the 2% permanent partial disability rating to her left leg. Plaintiff is also entitled to temporary total disability compensation for the days she was taken out of work due to her injury by medical providers. The evidence establishes that she was removed from work 27 days. There was one other period when she was medically taken out of work for two weeks but she testified she mostly worked. There is insufficient evidence from which to conclude that Dr. Patel took Plaintiff out of work in September 2006. N.C. Gen. Stat. §§ 97-29, 97-31.
5. The competent and credible lay and medical evidence establishes that Plaintiff's position with Defendant, which allowed her to work within the restrictions imposed by her doctors, constituted suitable employment. Due to her refusal to accept suitable employment without justification, Plaintiff is not entitled to compensation for any period she failed to work *Page 12 
beginning September 2006, unless she was written out of work by an authorized medical provider. N.C. Gen. Stat. §§ 97-32, 97-29.
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 A W A R D
1. Defendant shall pay Plaintiff permanent partial disability at the rate of $685.13 for 4.8 weeks for the 2% rating to her left arm and for 4 weeks for the 2% rating to her left leg. Defendant shall pay to Plaintiff temporary total disability compensation at the rate of $685.13 for the 27 days she was taken out of work due to her injury by medical providers. As to the period when Plaintiff was medically taken out of work by Dr. Rice, the parties shall confer and try to establish if any additional compensation is owed for days Plaintiff can prove she was out of work.
2. The medical treatment provided to Plaintiff by Dr. Rice on August 17, 2006 and Dr. Patel on September 20, 2006 is hereby approved; however, Defendant is allowed to direct future medical treatment.
3. Due to her refusal to accept suitable employment without justification, Plaintiff's claim for compensation after she stopped working in September 2006 is denied.
4. Defendant shall bear the costs.
This the ___ day of January 2008.
 S/______________________
 BERNADINE S. BALLANCE
 COMMISSIONER
CONCURRING:
 S/______________________ BUCK LATTIMORE COMMISSIONER
 S/______________________ LAURA K. MAVRETIC COMMISSIONER *Page 1